AO 106 (Rev. 04/10) Application for a Search Warrant

FILED
U.S. District Court
District of Kansas

JUL 1 2019

Clerk, U.S. District Court
By_____ Deputy Clerk

# UNITED STATES DISTRICT COURT
for the
District of Kansas

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

6650 N. Broadway, Park City, Kansas, 67219, including the building and any storage and garbage containers. Also, any computer and computer media found therein.

)
)
)   Case No. 19-6100-GEB
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

6650 N. Broadway, Park City, Kansas, 67219, including the building and any storage and garbage containers. (see Attachment A for a detailed description). Also, any computer and computer media found therein.

located in the _____ District of ___Kansas___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, for a description of items to be seized and searched.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 17 U.S.C. §§ 1204, 1201 | Criminal Circumvention of Copyright Protection Systems. |
| 17 U.S.C. §§ 506, 501 | Criminal Infringement of a Copyright. |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____ A0407
*Applicant's signature*

John V. Ferreira, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/01/2019 @ 11:37 a.m.

_____
*Judge's signature*

City and state: Wichita, Kansas

Gwynne E. Birzer, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF PROBABLE CAUSE

## INTRODUCTION

1. I am a Special Agent of Homeland Security Investigations under the Department of Homeland Security (hereinafter "HSI") currently assigned to HSI Wichita, Kansas and have been a special agent of HSI since August 2004. Previously, I was a police officer with the Arizona Department of Public Safety for nine years.

2. This affidavit is made in support of an application for a warrant to search **6650 N. Broadway, Park City, Sedgwick County, Kansas, 67219**, including the building and any storage and garbage containers surrounding the building. (see Attachment A, for detailed description). Additionally, this application is to search any computer and computer media found therein.

3. This affidavit is based upon information I have gained from my investigation and my training and experience. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are

necessary to establish probable cause to believe that evidence of violations of 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright are located at the above address. Based upon the following information, there is probable cause to believe that currently located within the above-described premises is the evidence, fruits, and instrumentalities of the crimes 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright including:

a. Business records, billing statements, invoices, payment receipts, employment forms, applications, books, notes, ledgers, time sheets, and other records; including all documents related to contracts, purchase orders, or any other similar agreements between LIGHTNING and the Department of Defense with bearing on 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright.

  b. Tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, thumb drives, memory sticks, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive, including external hard drives, and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and the data within the aforesaid objects relating to said materials, which may be, or are, used to circumvent a copyright protection system or infringe on a copyright.

## THE INVESTIGATION

4. I was contacted by a Dassault Systemes employee about an investigative lead regarding a company that was using unlicensed copies of engineering software.

The employee identified a company later identified as Lightning Aerospace (LIGHTNING) and indicated LIGHTNING had not purchased a license to use their engineering software called CATIA. In Southwest Kansas, the predominate use for CATIA software is aircraft and aircraft parts manufacturing.

5. Dassault Systemes (DASSAULT) is a company that provides 3D design software known as CATIA. CATIA (computer-aided three-dimensional interactive application) is a multi-platform software suite for computer-aided design (CAD), computer-aided manufacturing (CAM), computer-aided engineering (CAE), PLM and 3D, developed by Dassault. DASSAULT owns the copyright for the software program in the United States.

6. Within the programming of the software is piracy reporting technology. DASSAULT implemented piracy monitoring functionality to detect and report on the unauthorized use of DASSAULT products. The piracy reporting technology only identifies unlicensed use where the software has been tampered with and a 'crack' applied to circumvent the licensing mechanism and does not impact DASSAULT customers running licensed software. Data will only be sent to DASSAULT servers when the DASSAULT product

license mechanism has been tampered with. No personally identifiable data or customer proprietary information is being collected by this technology. The information contains only network, machine identify and application license data. The monitoring and reporting functions are embedded in the DASSAULT software and are not separately installed applications. If piracy is detected, the data is transmitted using a one-way communication over standard HTTP protocol to DASSAULT.

7. DASSAULT Anti-Piracy and Compliance Department was notified by the piracy monitoring functionality of unauthorized uses by an IP address[1] from Cox Communications. Through their initial investigation into the IP address, they were able to identify the business as "lightning" and determine one (1) machines generated approximately 1600 CATIA infringements between October 2016 and June 2019. The company was using a pirated version of CATIA and the infringements occurred on several different IP addresses that appeared connected to the same company. In addition, the employee was able to

---

[1] "IP" stands for Internet Protocol. An Internet Protocol address is part of the systematically laid out interconnected grid that governs online communication by identifying both initiating devices and various Internet destinations, thereby making two-way communication possible. An IP address is a code made up of numbers separated by three dots that identifies a particular computer on the Internet.

determine through the imbedded piracy software that LIGHTNING used three (3) different versions of CATIA, which meant they downloaded three (3) separated cracked versions of CATIA. A DASSAULT employee provided me with a spreadsheet of data containing information related to the infringements from "lightning". This spreadsheet contained dates and IP addresses for the infringements.

8. I determined the IP addresses of all the infringements reported by DASSAULT were operated by a communications company, COX COMMUNICATIONS, INC, (COX) which is based in Atlanta, Georgia.

9. I submitted a federal summons with the IP addresses and dates reported by DASSAULT to COX. COX confirmed all the IP addresses returned to the same subscriber, Lightning Aerospace and listed the name Craig Bakel and phone number 316-295-4670. At the time of the summons, Lightning was located at 2536 Leonine Road, Wichita, Kansas. In 2017, LIGHTNING moved their location to 6650 N. Broadway, Park City, Kansas.

10. LIGHTNING is owned/operated by Craig Bakel and is located at 6650 N. Broadway, Park City, Kansas. LIGHTNING is in the aircraft business or categorized

under Aircraft Engines and Engine Parts. Records showed it was established in 2007 and incorporated in Kansas. According to the company website (www.lightningaerospace.net), the building is approximately 16,500 square feet and houses eleven (11) CNC machines. News information posted on the company website indicated the company moved to the location in Park city from the building located on South Leonine Street in Wichita in 2017.

11. Agents drove by 6650 N. Broadway, Park City, Kansas and observed a large manufacturing structure. Located on the building was a large sign with the LIGHTNING logo.

12. Open source searches indicated the building located at 2536 Leonine Road, Wichita, Kansas was available for sale.

13. Additional open source internet searches, which include the LIGHTNING website, www.lightningaerospace.net, revealed the company manufactures small to medium sized parts for the aircraft industry. It indicated Craig Bakel has over 30 years experience working in the aircraft

manufacturing industry. "Our capabilities are small to medium size 3-5 axis machine parts. (Aluminum, Stainless, Titanium, Alloy Steel, Phenolic and Plastics) We have the capability to brake form small to medium size sheet metal parts. We do some minor assembly of nut plates, brackets, hinge assemblies, and kitting. Since 2007, we have done work directly for the DOD and Cessna, indirect work for Boeing, Goodrich, Beechcraft, Honda Jet, Hamilton Sundstrand, Gulfstream, and Learjet."

14. Additional open source searches indicated LIGHTNIING had received purchase order agreements for defense contracts to produce aircraft parts.

15. I contacted Special Agent Scott Dyer of the Defense Criminal Investigative Service (DCIS) reference defense contracts between LIGHTNING and the Department of Defense. SA Dyer was able to determine from 2017 to present, LIGHTNING had been awarded 33 Purchase Order (PO) contracts valued at $51,859, and to date most of the components for these POs had been delivered. Components produced include brackets, plates, glides, stiffeners, housings, ribs, tail clips, and other structural components. In particular, four (4) POs, SPE5E3-17-P-0064, SPE4A7-17-V-1428, SPE4A7-17-V-0771, and

SPE4A7-17-V-1074, involved parts produced for the Department of Defense nuclear enterprise, including furniture glides for the Intercontinental Ballistic Missile (ICBM) and critical structural support parts for the B-52 Stratofortress. All of the components from those four POs were delivered in 2017.

16. A query of the DCIS Case Reporting and Information Management System (CRIMS) for LIGHTNING resulted in one Information Report originated in 2017 by DCIS (CN 2017002862) in which LIGHTNING was also suspected of using a pirated version of CATIA.

17. Based on my training and experience in conducting similar investigations, I know companies like LIGHTNING receive orders from large aircraft manufacturers to design and/or manufacture aircraft engine parts and other parts of aircraft. The larger manufacturing company will design and then send the requested part in CATIA for the smaller company to review and bid to manufacture. In order to review a part designed in CATIA, the reviewing company must also have the CATIA software. On some occasions the larger company will contract with the smaller company to completely design the part in CATIA and then use the CATIA design and software to manufacture it. These exchanges between the

companies are sometimes conducted through an internet digital portal that both companies utilize because the data files are so large and so the exchanges are secure. On other occasions the companies exchange the designs through cloud-type storage links, like Dropbox or Google Drive.

18. Once the bid is accepted, the smaller company will then use CATIA to design the part and then send the design data back to the larger company via the internet portal for review. When the larger company hires the smaller company to manufacture the part, the CATIA design is sent through the internet portal to the smaller company to manufacture it or through a cloud drive link. The CATIA design is then used through a Computer Numerical Control (CNC) manufacturing process that produces the aircraft part. CATIA software is used in the design and manufacturing processes.

19. Aircraft companies utilize computers and computer related storage devices to manufacture a product using CATIA whether they are designing, bidding, reviewing or manufacturing the part. I know larger aircraft manufacturing companies in the state of Kansas use CATIA to manufacture aircraft and

aircraft parts and therefore, CATIA is necessary for a smaller company, like LIGHTNING, to operate in the aircraft parts manufacturing industry.

20. Larger aircraft companies contract smaller aircraft parts manufacturers to design, manufacture, or design and manufacture aircraft parts using CATIA software. During these business transactions, business records, billing statements, invoices, payment receipts, and other records are generated. These records document business transactions between companies, describing the product or service provided and how much was billed and paid.

21. I have maintained communication with the Anti-Piracy and Compliance Department of DASSAULT, who continue to provide updates and evidence that LIGHTNING continues to infringe on the copyrights of DASSAULT. Because the infringements have continued over the course of over two (2) years and through three (3) different cracked versions of CATIA, there is no evidence LIGHTNING will cease from infringing on the copyright of DASSAULT.

**CONCLUSION**

22. I also know from my training and experience that persons involved in crimes involving copyright infringement use computers and peripheral equipment to further their criminal activities. In fact, most aircraft manufacturing companies use computers and computer related storage devices to manufacture a product and then send that product over the internet to their customers, so it is very likely LIGHTNING generated a product from pirated CATIA software protected by copyright and then sent that product over the internet.

23. Based upon the information contained in this Affidavit, as well as my training and experience in the investigation of these types of crimes, the computer equipment seized is likely to contain digitally-stored information that is evidence of the defendant's criminal activities, including violations 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright. In fact, information gathered from the industry and previous investigation indicates LIGHTNING likely conducted most business affairs through digital data exchange

and the product LIGHTNING created from pirated software was digital programming.

24. Based upon the foregoing, your affiant asserts that probable cause exists that the evidence, fruits, and instrumentalities of the crimes of 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright, are located at building 3 of Attachment A at **6650 N. Broadway, Park City, Sedgwick County, Kansas, 67219** because there is credible evidence that the occupants(s) of this business have engaged in criminal activity relating to copyright infringement and circumvention of copyright protection systems.

25. Additionally, I believe that any computers or computer related media discovered will also contain "property" as defined by Rule 41(b), such as computer programs and other data files that are designed and intended to be used as a means of committing the aforementioned crimes. The evidence and instrumentalities would be in data and image files contained in the listed computer hardware. More specifically, the evidence and instrumentalities sought includes computer passwords

and data security devices, data related to the electronic manufacture of programming obtained through copyright infringement, data containing names and addresses and victims or others involved in the alleged criminal activities, ledgers, reports, correspondence, electronic mail sent or received, and any other electronically-stored information reflecting the illicit activities of persons engaged in circumvention of copyright protection systems and copyright infringement. Information gathered from the investigation indicates LIGHTNING conducted most business affairs, the nature of which was data programming, through digital data exchange. Therefore, it is requested to search the seized items that will contain this evidence.

26. Your affiant respectfully requests that a search warrant be issued authorizing United States Homeland Security Investigations (HSI) agents, with the appropriate assistance from other law enforcement officers, to search for and to seize items listed in Attachment B, which is property that constitutes evidence of a criminal offense in violation of 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal

Infringement of a Copyright, and also contraband, the fruits of a crime, or things otherwise criminally possessed.

27. Your affiant respectfully requests that a search warrant be issued authorizing United States Homeland Security Investigations agents, with the appropriate assistance from other law enforcement officers, to enter the following described premises on Attachment A.

_____
John V. Ferreira, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this 1st day of July, 2019.

_____
Gwynne E. Birzer
U.S. Magistrate Judge
District of Kansas

ATTACHMENT A

BUSINESS DESCRIPTION

The large beige colored metal structure located at **6650 N. Broadway, Park City, Sedgwick County, Kansas, 67219**. The property includes any appurtenances, including but not limited to any storage containers, dumpsters, or garbage cans surrounding the structure.



**ATTACHMENT B**

**ITEMS TO BE SEIZED**

1. Business records, billing statements, invoices, payment receipts, employment forms, applications, books, notes, ledgers, time sheets, and other records or documents; including all documents related to contracts, purchase orders, or any other similar agreements between LIGHTNING and the Department of Defense with bearing on 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright 19.

2. Tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, thumb drives, memory sticks, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive, including external hard drives, and other computer related operation equipment, digital cameras, scanners in addition to computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not

limited to, JPG, GIF, TIF, AVI, and MPEG), and the data within the aforesaid objects relating to said materials, which may be, or are, used to violate 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright.

2a. I have solicited the assistance of Wichita Police Department Computer Forensic Agents to assist in the collection of computer related evidence. These agents have the ability and equipment necessary to conduct previews to determine whether computer data evidence is present on computers and internal or external hard drives. In relation to the seizure of computers, the investigation has revealed a MAC address for a device operating a pirated version of CATIA at LIGHTNING. Because that device will likely have pirated software loaded on the hard drive, I request permission to seize those computers and any other computer or external hard drive containing a pirated version of CATIA software as evidence of a crime. In addition, those computers and external hard drives will potentially contain other data, which may be evidence of violations of 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright. It is possible that during the course of the search warrant computers will be located not containing

pirated software but may contain business records or other evidence of violations of 17 U.S.C. 1204, with reference to 17 USC 1201, Criminal Circumvention of Copyright Protection Systems and 17 U.S.C. 506, with reference to 17 USC 501, Criminal Infringement of a Copyright. If possible, the computer forensic agents will utilize external hard drives and other equipment to mirror the LIGHTNING hard drives and not seize those computers. Unfortunately, it is impossible to determine the data capacity of the hard drives of those business computers. If those hard drives are too large to image while at the business, the computer forensic agents will mirror them at their office in Wichita. Agents will return them to LIGHTNING as soon as possible so any legitimate business being conducted will be impacted as little as possible.